**CARLSON LYNCH LLP**
(Eddie) Jae K. Kim (CA Bar #236805)
ekim@carlsonlynch.com
117 East Colorado Blvd., Ste. 600
Pasadena, CA 91105
Tel.:  619-762-1910
Fax:  412-231-0246

**CARLSON LYNCH LLP**
Edwin J. Kilpela (Pro Hac Vice Pending)
ekilpela@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel.:  412-322-9243
Fax:  412-231-0246

*Attorneys for Plaintiffs and the Proposed Class*

[Additional counsel listed on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO, FELIX RABINOVICH, RICHARD FAMIGLIETTI, JESSE GORDON, GREGORY SZOT, MARTIN DIGNARD, and MICHAEL KOVACH, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>EPSON AMERICA, INC.,<br><br>          Defendant. | Case No. 2:20-cv-04400<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

     Plaintiffs William Mondigo ("Mondigo"), Felix Rabinovich ("Rabinovich"), Richard Famiglietti ("Famiglietti"), Jesse Gordon ("Gordon"), Gregory Szot ("Szot"), Martin Dignard ("Dignard"), and Michael Kovach ("Kovach") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Complaint against Epson America, Inc., ("Epson" or "Defendant") and allege as follows:

## I.    NATURE OF THE CASE

1.    This is a class action brought to seek redress on behalf of all persons and entities (the "Class Members") who purchased a printer from Epson and suffered harm as result of Epson's anti-competitive, unfair, fraudulent, and oppressive and illegal conduct.

2.    Epson is a global company that manufactures various technology products, including inkjet printers.  The ink cartridges in Defendant's inkjet printers require periodic replacement.  Replacement ink cartridges for Epson printers are manufactured by Epson as well as third-party manufacturers.

3.    In an effort to improperly and illegally quash competition from third-party ink cartridge manufacturers, Epson engaged, and continues to engage, in a systematic campaign of disabling Epson printers when non-Epson, replacement ink cartridges are installed.  To carry out this scheme, Epson designed and delivered software and/or firmware Updates (defined below) to Epson printers that purposely disabled those printers with non-Epson printer cartridges installed.  For many users, these software Updates effectively ruined their printers.  For others, the Updates forced them to purchase Epson ink cartridges, which are significantly more expensive than third-party cartridges.

4.    There is nothing inherently wrong with third-party ink cartridges that causes them to fail or that precludes their use in Epson printers.  Third-party ink cartridges function without issue on Epson printers that do not have the Updates installed.

5.    Epson never informed Epson printer owners that the Updates would prevent their printers from working if they had third-party ink cartridges installed.  To the contrary, the Epson Software License informs consumers that the software and/or firmware Updates will improve the printers and fix known issues.

6.    Epson's actions violate the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Connecticut Unfair Trade Practices Act ("CUTA"),

Conn. Gen. Stat. § 42-110a, *et seq.*, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, the California Computer Data Access and Fraud Act ("CDAFA"), and Cal. Pen. Code § 502 (Unauthorized access to computers, computer systems and computer data); and Epson has been unjustly enriched as a result of its violative actions at the expense of consumers across the United States.

## II.    PARTIES

### Plaintiffs

7.    Mondigo purchased and owns an Epson WorkForce WF-3640 All-in-One Printer.  He is a resident of San Diego, California.  Mondigo carefully reviewed the printer specifications before he chose to purchase the Epson WorkForce WF-3640 All-in-One Printer.  The specifications did not disclose that Epson would disable the printer if he used third-party ink cartridges.

8.    Rabinovich purchased and owns an Epson Expression Premium XP-7100 All-in-One Printer.  He is a resident of Los Angeles, California.  Rabinovich carefully reviewed the printer specifications before he chose to purchase the Epson Expression Premium XP-7100 All-in-One Printer.  The specifications did not disclose that Epson would disable the printer if he used third-party ink cartridges.

9.    Famiglietti purchased and owns an Epson XP-830 All-in-One® printer. He is a resident of Waterbury, Connecticut.  Famiglietti carefully reviewed the printer specifications before he chose to purchase the Epson XP-830 All-in-One® printer.  The specifications did not disclose that Epson would disable the printer if he used third-party ink cartridges.

10.    Gordon is a resident of Stillwater, Oklahoma.  He purchased an Epson WF-4740 from Office Depot in May 2019.  Gordon reviewed the packaging and printer specifications before he chose his printer.  Neither the packaging nor the specifications disclosed that Epson would prevent him from using third party ink cartridges in his printer.

11.    Szot is a resident of Naples, Florida.  He purchased an Epson XP 440 printer in August 2018.  Szot reviewed the packaging and specifications of the printer before he decided which printer to purchase.  Neither the packaging nor the specifications disclosed that Epson would prevent him from using third party ink cartridges in his printer.

12.    Dignard is a resident of Virginia Beach, Virginia.  He purchased an Epson Workforce Pro WS3720 3-in-1 printer/scanner/fax in January 2019.  When making his purchase, he reviewed the packaging and specification of his printer.  Neither the packaging nor the specifications disclosed that Epson would prevent him from using third party ink cartridges in his printer.

13.    Kovach is a resident of Raleigh, North Carolina.  In mid-2019, Kovach purchased an Epson Workforce 3720 printer.  When making his purchase, he reviewed the packaging and specification of his printer.  Neither the packaging nor the specifications disclosed that Epson would prevent him from using third party ink cartridges in his printer.

**Defendant**

14.    Defendant Epson America, Inc. is headquartered in Long Beach, California.  Epson is the American subsidiary of Seiko Epson Corporation, a Japanese corporation.  Epson America, Inc. is incorporated in the State of California.  Epson America, Inc. is responsible for selling and marketing Epson printers in the United States.

15.    Upon information and belief, Epson's conduct emanated from its headquarters in Long Beach, California, and the Epson employees/personnel responsible for this conduct are located at Epson's California headquarters.

**III.    JURISDICTION AND VENUE**

16.    This Court has federal question subject-matter jurisdiction pursuant to 18 U.S.C. § 1331 because Plaintiffs alleges that Epson violated the CFAA, 18 U.S.C. § 1030, *et seq.*

17.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are at least 100 proposed Class Members, and at least one member of the Class (defined below) is a citizen of a different state than Defendant.  Further, greater than two-thirds of the Class Members reside in states other than the state in which Defendant is a citizen.

18.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all the claims alleged form part of the same case or controversy.

19.     Venue is proper in this District pursuant to 28 U.S. C. §§ 1391(b)(2) and 1391(d) because a substantial part of the events and omissions giving rise to the claims emanated from activities within this District.

## IV.     FACTUAL ALLEGATIONS

20.     Epson markets and sells printers and Epson ink cartridges in the United States.  Consumers can purchase printers directly from Epson or from retailers such as Staples, Best Buy, Walmart, Amazon and others.

21.     Epson printers typically come with Epson ink cartridges installed but those ink cartridges will eventually need to be replaced as the printer is used.  The sale of replacement ink cartridges is an important source of revenue and profit for Epson as Epson ink cartridges range in price from approximately $10 to $150 or more for high-end printers.  In many cases, the cost of replacement cartridges over the life of a printer is significantly larger than the cost of the printer itself.

22.     Original Equipment Manufacturer ("OEM") ink cartridges for the Epson XP-830, ink code 410, cost approximately $12.99 for a single black, cyan, magenta or yellow ink cartridge.  A set of four standard ink cartridges typically costs approximately $48.29.[1]  A 410XL capacity ink cartridge for the XP-830 costs between $18.99 and

---

[1]  Epson, Epson Expression Premium XP-830 All-in-One All-in-One Printer Ink, https://epson.com/InkFinder/i/C11CE78201 (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

$24.99.   As shown in the graphic below, a set of four XL cartridges costs between $75.96 (four (4) cartridges at $18.99 each) to $82.96 (three (3) cartridges at $18.99 and one (10 cartridges at $24.99):

| Color | Ink Code | Our Price | Qty | Change Qty |
|---|---|---|---|---|
| Epson 410, Black Ink Cartridge | 410 | $12.99 | 0 | + − |
| Epson 410, Photo Black Ink Cartridge | 410 | $12.99 | 0 | + − |
| Epson 410, Cyan Ink Cartridge | 410 | $12.99 | 0 | + − |
| Epson 410, Magenta Ink Cartridge | 410 | $12.99 | 0 | + − |
| Epson 410, Yellow Ink Cartridge | 410 | $12.99 | 0 | + − |
| Epson 410, Photo Black and Color Ink Cartridges, C/M/Y and Photo Black 4-Pack | 410 | $48.29 | 0 | + − |

| Color | Ink Code | Our Price | Qty | Change Qty |
|---|---|---|---|---|
| Epson 410XL, Black Ink Cartridge, High Capacity | 410XL | $24.99 | 0 | + − |
| Epson 410XL, Photo Black Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + − |
| Epson 410XL, Cyan Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + − |
| Epson 410XL, Magenta Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + − |
| Epson 410XL, Yellow Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + − |

23.    Third-party ink cartridges for the Epson XP-830 cost substantially less. For instance, on Amazon, it is possible to purchase a 5-pack of 410XL Lemero remanufactured ink cartridges for only $34.99.[2]



Lemero Remanufactured Ink Cartridge Replacement for Epson 410XL ( Black,Cyan,Magenta,Yellow , 5-Pack )
by Lemero
$34.99 ✓prime
FREE Delivery by Sat, Nov 3
★★★★☆ ▾ 48
Save $2.00 with coupon

[2] Amazon, https://www.amazon.com/s?k=Epson+xp+830+ink+cartridge+replacements&url =searchalias%3Delectronics&ref=nb_sb_noss (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

24.     Similarly, Original Equipment Manufacturer ("OEM") ink cartridges for the Epson WF-3640, ink code 252, cost approximately $19.99 for a single black, or $12.99 for a single cyan, magenta or yellow ink cartridge.  A set of four standard ink cartridges typically costs approximately $56.15.[3]

| Color | Ink Code | Our Price | Change Qty |
|---|---|---|---|
| Epson 252, Black and Color Ink Cartridges, C/M/Y/K 4-Pack | 252 | $56.15 | - 0 + |
| Epson 252 Black Ink Cartridges, 2 Pack | 252 | $37.99 | - 0 + |
| Epson 252, Black Ink Cartridge | 252 | $19.99 | - 0 + |
| Epson 252, Cyan Ink Cartridge | 252 | $12.99 | - 0 + |
| Epson 252, Magenta Ink Cartridge | 252 | $12.99 | - 0 + |
| Epson 252, Yellow Ink Cartridge | 252 | $12.99 | - 0 + |
| Epson 252, Color Ink Cartridges, C/M/Y 3-Pack | 252 | $36.19 | - 0 + |

25.     Third-party ink cartridges for the Epson WF-3640 cost substantially less. For instance, on Amazon, it is possible to purchase a 5-pack of remanufactured ink cartridges for less than $30.[4]

---

[3] Epson, Epson WorkForce WF-3640 All-in-One Printer Ink, https://epson.com/InkFinder/i/C11CD16201 (last accessed Oct. 14, 2019).

[4] Amazon, https://www.amazon.com/s?k=replacement+ink+WF-3640&ref=nb_sb_noss_2 (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT





26. In its 2018 Annual Report, Seiko Epson Corporation acknowledges that, "Third parties also supply ink cartridges and other printer consumables that can be used in Epson printers."[5]

27. The Epson 2018 Annual Report further acknowledges that third-party ink cartridges could cut into its bottom line and could result in its losing market share.

28. In that report, however, Epson does not discuss disabling printers to increase market share. Instead, the report suggests more benign methods for achieving that goal such as "emphasiz[ing] the quality of genuine Epson brand" ink cartridges, "enhance[ing] customer experience and develop[ing] new products like printers with "high capacity ink tanks." *Id*. Epson goes far beyond these measures. It actively interferes with the functioning of third-party ink cartridges installed in Epson printers, that it acknowledges "can be used" by installing firmware and software Updates that prevent them from working in order to quash competition.

---

[5] Seiko Epson Corporation, 2018 Annual Report ("Epson 2018 Annual Report"), 18, available at https://global.epson.com/IR/library/pdf/ar2018.pdf (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

29.     Similarly, in its 2019 Annual Report, Epson concedes that "third parties also supply ink cartridges and other inkjet printer consumables that can be used in Epson printers."  Furthermore, Epson conceded that third-party ink cartridges "are typically sold for less than genuine Epson brand" cartridges.[6]

30.     Once again, however, Epson doesn't mention the fact that it intends to block its users from purchasing these third-party ink cartridges and, instead, states that "[t]o counter sales of third-party consumables for inkjet printers, we must emphasize the quality of genuine Epson products and must look to continuously realize customer value by further enhancing customer convenience with inkjet printers tailored to the needs of customers in each market."[7]

31.     In reality, however, Epson relies on firmware updates it pushes out to unsuspecting customers to block the use of third-party ink cartridges—thus allowing Epson to keep that substantial profit stream captive.

**The Firmware/Software Updates**

32.     A printer owner must agree to Epson's software license when purchasing and using an Epson printer.  The second paragraph of that license states that "Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available Updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates."[8]

---

[6] Seiko Epson Corporation, 2019 Annual Report ("Epson 2019 Annual Report"), 14, available at global.epson.com/IR/library/pdf/ar2019.pdf (last accessed May 5, 2020).

[7] *Id.*

[8] Epson, Software License Agreement, available at https://epson.com/SoftwareLicenseAgreement (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

33.    The Software License covers "any related documentation, firmware, or Updates."[9]

34.    Certain updates require the user to agree to the EPSON EULA EN 10/30/2009 Seiko Epson Corporation Software License Agreement.  That license does not discuss software Updates or fixes, except to state that any license includes any future Updates.

35.    Under the terms of Epson's software licenses, Plaintiffs (and any other Epson Pinter user who downloaded Epson software) authorized Epson to access their printers to apply fixes and upgrades. The Software licenses do not alert owners that these software Updates might render their printer inoperable if they use or attempt to use third-party ink cartridges.  Instead, these updates promise fixes and other, unspecified, 'improvements.'

36.    Plaintiffs and other Epson printer owners *did not* authorize Epson to disable their printer to prevent them from using cheaper third-party alternatives to Epson's OEM ink cartridges.  Instead, Epson exceeded its authority when it disabled their printers (and the Class and Subclasses' printers, as defined below.)

**Epson's Misrepresentations and Omissions**

37.    Epson made misrepresentations and omissions regarding Epson printers and the use of third-party ink cartridges.

38.    Specifically, after Updates are installed to detect and disable third-party ink cartridges, Epson printers display a message claiming that the printer is having a "Maintenance Error," that the ink cartridges are empty when they do not, and/or that it does not "recognize" the ink cartridge when third-party ink cartridge is installed.

39.    The error message that the printers displayed after Updates were installed, misrepresented the cause of the printer issue, suggesting that the previously functioning third-party cartridges were broken or not installed properly when, instead, the updated software simply disables replacement ink cartridges that would otherwise work.

---

[9] *Id.*

40.    These error messages are in direct contradiction to Epson's representations to Plaintiffs and class members that its software and firmware Updates were intended to fix or improve printer functionality.

41.    Furthermore, Epson misrepresented to Plaintiffs and Class Members that third-party cartridges were incompatible, when those cartridges would have worked in Epson printers and were compatible until Epson intentionally altered the software that controlled Epson printers.

42.    Epson neglected to inform Plaintiffs and others like them that accepting Updates would potentially disable their machine and, at the very least, force them into purchasing Epson ink cartridges.

43.    Epson's decision not to inform Plaintiffs and others like them that the Updates would disable their printers if they attempted to use third-party ink cartridges was made and implemented from its headquarters in California.

**Epson's Unfair and Oppressive Conduct**

44.    Epson's actions were contrary to public policy as set forth in CFAA, 18 U.S.C. § 1030 and the CDAFA, Cal. Pen. Code § 502, which prohibit computer intrusions that damage or disable computer equipment including Epson printers.

45.    Epson used its ability to access and alter their programming to disrupt the functioning of the Epson Printers to suppress competition.

46.    Epson's conduct caused harm to Plaintiffs and other Epson printer owners by forcing them to buy more expensive OEM cartridges and by rendering their less expensive cartridges useless as means for Epson to maintain its market share and profits.

47.    There were reasonable alternatives to Epson's conduct, which are listed in the Epson 2018 Annual Report and the Epson 2019 Annual Report. Epson could have created reasons for Epson users to choose its ink cartridges. It could emphasize that Epson printers are of higher quality. Epson could have won over customers by providing superior customer experiences or by providing alternatives to its customers

1    rather than by secretly causing functioning printers with functional ink cartridges

2    installed to stop working.

3        48.    Epson's conduct was intentional and designed to suppress competition,

4    and resulted in forcing Epson customers to pay for Epson's more expensive ink.

5        49.    Epson was able to take unfair advantage of Plaintiffs and others like them

6    by rendering their printers non-functional and providing misleading error messages.

7        50.    Epson's conduct was widespread, pervasive, and known by technology

8    industry analysts and advocates.  For example, on or about October 10, 2018, a letter

9    was sent by the Electronic Frontier Foundation, a nonprofit public interest organization

10    that defends the rights of technology users, to the Office of the Attorney General of

11    Texas detailing Epson's conduct, as described herein, and asking the Attorney General

12    to investigate Epson's practice of disabling printers when third-party ink cartridges are

13    installed.  A true and correct copy of the October 10, 2018 letter is attached hereto as

14    **Exhibit 1** and publicly available at https://www.eff.org/files/2018/10/10/letter_to_epson

15    _final_2018.10.10.pdf.

16        51.    Additionally, individual accounts of having been victimized by Epson's

17    conduct are widely available on consumer and technology websites.  Some examples of

18    these complaints are as follows:

19    I Installed a firmware update, and now the printer can no longer

20    "recognize" my print cartridges which had been working fine until the
      update. Word on the Internet is that Epson deliberately tries to punish

21    people who buy replacement cartridges from other vendors, so they can
      sell their overpriced ones, and they do that by updating the firmware so

22    that other vendor cartridges are "not recognized".

23    This is despicable. I will never buy another Epson product. They have even
      spawned a cottage industry that for $5 sells a firmware downgrade.

24    It is cheaper to buy a new printer than to buy Epson replacement cartridges.

25    Their business practices are predatory and should be illegal.

26    By: PissedConsumer1167767

27    *Source:* https://epson.pissedconsumer.com/after-firmware-update-
      cartridges-not-recognized-201801121167767.html

28                                   * * *

I am so disgusted with Epson right now. I purchased my Epson 446 printer. I purchased my ink. In no way should Epson be able to lock up my printer because I choose to use re-purposed ink cartridges. I bought this printer because I am a Girl Scout Leader/Volunteer who wears many hats. I need a printer that will hold up. I also need a printer for some small home jobs too. I was in the middle of a print job and locked up because I decided to run the firmware update and now it will not recognize my ink. I wasted money buying this printer because now I cannot do anything with it. I just purchased $50+ in ink. I will not be forced to use Epson ink. I will go buy a new printer, and I will never recommend or buy another Epson product.

By: ColdBlackbird305

*Source:* https://epson.pissedconsumer.com/review.html

* * *

I do bookkeeping at home. I was working this weekend and noticed I had a download. I have always used off brand ink and have an entire box of it. As soon as I did the download my printer locked and said to replace all my inks. I feel I should be able to use any ink I choose. I feel like my printer is being held hostage. I feel like this is communism - you buy a product but it is really not yours. Needless to say I could continue to work or do payroll. I'm throwing it out the window. I will never buy another Epson product.

*By:* Peggy of Spartanburg, SC

*Source:* https://www.consumeraffairs.com/computers/epson.html

* * *

I recently purchased a new Lenovo computer and installed my Epson Stylus SX 115 software onto it. All was fine until the black ink ran out. To make sure that the printer was entirely compatible with the new computer I decided to upgrade the driver before I replaced the black ink. I always use compatible inks, because Epson inks are so extortionately expensive, and have never had any problems with them. Accordingly, after I had installed the new driver, I replaced the black with a compatible in.

When I next went to print I received a message telling me that the black I had installed was not a genuine Epson ink and, after various other caveats, it asked me if I wished to continue anyway. I clicked the continue button and was then taken to a screen that said that the ink cartridge 'cannot be recognised', and it showed a big cross over the black cartridge symbol. Since when I have been unable to print anything.

There has recently been a considerable number of complaints in the press about the practice of printer manufacturers refusing to recognize third-party inks when the firmware is updated over the internet. Only this month Which magazine has an article about it which tells me that such practices are against my consumer rights because I am entitled to use whichever inks I choose with my printer.

I therefore request that Epson immediately tell me how to resolve this problem so that I can get my printer working again with third-party inks. I

CLASS ACTION COMPLAINT

am copying this to Which magazine, as they are asking to hear from people like me who have had such problems.

*By:* Cherry Lewis from Birmingham, ENG

*Source:* https://www.hissingkitty.com/complaints-department/epson

**Plaintiff Famiglietti's Experience**

52.     Famiglietti purchased an Epson XP-830 in the beginning of 2018 from OfficeMax.

53.     Famiglietti considered several different printers but chose the Epson XP-830 because it had the features he was looking for.

54.     At the time of the purchase, Famiglietti understood and believed that he would be able to use less expensive third-party ink cartridges.  The Epson material he reviewed did not cause him to believe otherwise.

55.     Famiglietti's Epson XP-830 uses 410 & 410XL cartridges.  A couple of months after he purchased his Epson printer, Famiglietti purchased EZink remanufactured replacement cartridges from Ebay.  They cost less than $20.00 for a pack of four.  Famiglietti purchased the non-Epson cartridges because they were less expensive than the Epson OEM ink cartridges.  Epson cartridges would have cost significantly more.

56.     When his printer ran out of ink, Famiglietti replaced the Epson OEM cartridges with the EZink ink cartridges.  The EZink cartridges worked for several months.  He was able to print using his Epson XP-830 without interruption.

57.     In March or April of 2019, Famiglietti received a message from Epson when he booted up his printer alerting him that there were available Updates for his printer.   Famiglietti understood that the Updates would improve his printer's functionality.  Plaintiff proceeded to install the Updates.

58.     After he installed the Updates, Famiglietti's Epson printer stopped printing.

59.     The Updates included instructions that detected that Famiglietti had installed non-Epson ink cartridges in his XP-830 printer and disabled his printer.

CLASS ACTION COMPLAINT

60.    After the firmware Update, Plaintiff's XP-830 printer displayed an error message:



61.    Famiglietti was unable to print using his Epson printer after the Updates were installed.  He did not know that Epson would or that it, in fact did, use the Updates to access his printer and disable the ink cartridges.

62.    Based on the error message his printer displayed, Famiglietti replaced all four ink cartridges with new EZink replacement cartridges.  The printer still did not work and continued to display the same error message: "Ink Cartridges not recognized, replace the cartridges."

63.    Famiglietti attempted to resolve the error message by unplugging the printer for five (5) minutes and plugging it back in.  When prompted to install cartridges he reinstalled them.  His printer still did not work, and the same message appeared on the printer display.

64.    Famiglietti later learned that Updates caused the problem and attempted to uninstall the Updates that Epson had remotely installed in his printer.  The new software prevented him from reverting to the previous version that did not disable the EZink ink cartridges.

**Plaintiff Rabinovich's Experience**

65.    Rabinovich purchased an Epson Expression Premium XP-7100 All-in-One Printer around June 2019 from Fry's Electronics.

66.    Rabinovich considered several different printers but chose the Epson Expression Premium XP-7100 All-in-One Printer because it had features he was looking for.

67.    At the time of the purchase, Rabinovich believed that he would be able to use less expensive third-party ink cartridges in the future.  The Epson material he reviewed did not cause him to believe otherwise.

68.    Rabinovich's Epson XP-7100 printer uses 410 & 410XL cartridges. Around October 2019 when his printer ran out of ink, Rabinovich replaced the Epson OEM cartridges with non-Epson cartridges that were also designed to fit Rabinovich's Epson XP-7100 printer: LD Product Inc.'s "LD Remanufactured Ink Cartridge Replacements for Epson 410XL High Yield (1 Black, 1 Cyan, 1 Magenta, 1 Yellow, 1 Photo Black, 5-Pack)" (the "LD cartridges"), which were available for purchase through Amazon.  The LD cartridges worked for several months and he was able to print using his Epson XP-7100 printer without interruption.

69.    Around February of 2020, Rabinovich received a message from Epson when he booted up his printer alerting him that there were available Updates for his printer.  Rabinovich understood that the Updates would improve his printer's functionality.  Plaintiff proceeded to install the Updates.

70.    After he installed the Updates, Rabinovich's Epson printer stopped printing.

71.    The Updates included instructions that detected that Rabinovich had installed non-Epson ink cartridges in his XP-7100 printer and disabled his printer.

72.    After the firmware update, Plaintiff's XP-7100 printer displayed an error message:



73.    Rabinovich was unable to print using his Epson printer after the Updates were installed.  He did not know that Epson would or that it did, in fact, use the Updates to access his printer and disable the ink cartridges.

74.    Based on the error message his printer displayed, Rabinovich contacted Epson's technical support service via Epson's website.  After multiple back-and-forth messages that included requests for and delivery of photo attachments of the non-Epson cartridges, the Epson technical support representative came back with the following message:

CLASS ACTION COMPLAINT

Dear Felix,

Thank you for providing the photos. Unfortunately, it appears that you are not using genuine Epson Ink cartridges based on the information you have provided. To recover functionality of the printer, please replace all ink cartridges with genuine Epson inks. To ensure the ink product you are purchasing is Epson-branded, please purchase your supplies from reliable retailers, particularly if purchasing online.

The Epson XP-7100 is designed to work only with genuine Epson-brand ink cartridges. Other brands of ink cartridges and ink supplies are not compatible and, even if described as compatible, may not function properly or at all. Epson provides information about the design of the printer on the box and in many other locations and materials included with the printer and on the website.

Epson periodically provides firmware updates to address issues of security, performance, minor bug fixes and ensure the printer functions as designed. These updates may affect the functionality of third-party ink. Non-Epson branded or altered Epson cartridges that functioned prior to a firmware update may not continue to function.

Epson Support,
Luther S.
Customer By Web Form

75.    Rabinovich attempted to uninstall the Updates that Epson had remotely installed in his printer, however, the new software prevented him from reverting to the previous version that did not disable the LD cartridges.

76.    Rabinovich has since purchased a non-Epson replacement printer.

**Plaintiff Mondigo's Experience**

77.    Mondigo purchased an Epson WorkForce WF-3640 All-in-One Printer in 2016 from Costco.

78.    Mondigo considered several different printers but chose the Epson WorkForce WF-3640 All-in-One Printer because it had the features he was looking for.

79.    At the time of the purchase, Mondigo believed that he would be able to use less expensive third-party ink cartridges in the future.  The Epson material he reviewed did not cause him to believe otherwise.

80.    Mondigo's Epson WorkForce WF-3640 All-in-One Printer uses 252XL cartridges.  After his purchase, Mondigo replaced the printer's empty ink cartridges with new Epson cartridges and also with refilled Epson cartridges.  Mondigo switched

from these Epson products in 2018 when he purchased FreeSub replacement cartridges. Mondigo purchased the non-Epson cartridges because they were less expensive than the Epson ink cartridges. Epson cartridges would have cost significantly more.

81. To this end, when his printer ran out of ink in 2018, Mondigo replaced the Epson cartridges with the FreeSub ink cartridges. The FreeSub cartridges worked for multiple months. He was able to print using his Epson WorkForce WF-3640 All-in-One Printer without interruption.

82. At some point, Updates were installed on Mondigo's printer without his knowledge or consent.

83. The Updates included instructions that detected that Mondingo had installed non-Epson ink cartridges in his printer and disabled his printer.

84. After the Updates were installed, Mondigo received a message from Epson after turning on his Epson WorkForce WF-3640 All-in-One Printer. The error message instructed Mondigo to restart his printer. After he did so, the printer printed a test page but would not print any other job Mondigo sent it.

85. Mondigo attempted to fix his Epson WorkForce WF-3640 All-in-One Printer by restarting it, reinstalling the ink cartridges, and replacing the ink cartridges (with other third-party ink cartridges that had previously functioned). When these efforts failed, Mondigo purchased a replacement printer.

**Plaintiff Gordon's Experience**

86. Gordon purchased an Epson WF-4740 printer from Office Depot in May of 2019.

87. After the ink cartridges included with his printer ran low on ink, Gordon ordered third-party manufactured ink cartridges in June 2019 and used various brands of third-party ink cartridges over the next several months.

88. Sometime in early 2020, Gordon installed new printer drivers and updated the software on his printer when he purchased a new computer.

89.    Immediately after the software Updates, Gordon received a message on his printer that "no ink cartridges" were detected and, therefore, the printer would not function.

90.    The following "Maintenance Error" message was prominently displayed on Gordon's printer after the firmware was installed and the third-party ink cartridges were properly installed:



91.    And, as demonstrated above, the Epson firmware update caused Gordon's printer to display a message that the third-party manufactured ink cartridges were not installed correctly when, in fact, they were properly installed at all times.

92.    After trying to remedy this error by power cycling both his printer and computer, Gordon called Epson and was informed that his printer would not work unless he purchased and installed Epson-manufactured ink cartridges.

93.    Gordon ordered Epson ink cartridges and his printer worked as normal afterward.

94.    Eventually, Gordon purchased and attempted to use third party ink cartridges again but his printer again would not function unless Epson ink cartridges were used.

95.    For example, when Gordon properly installed third-party ink cartridges for each color, he received the following error message:



96.    When Gordon properly installed Epson-branded black ink and third-party color ink, the printer said the ink was not installed correctly:



97.    And, finally, when the third-party ink cartridges were installed, Epson's firmware update caused Gordon's Epson printer to falsely report that the ink cartridges were empty, when they were not:



**Plaintiff Szot's Experience**

98.    Szot purchased an Epson XP 440 printer in Rockville, MD on or around August 2018.

99.    After the ink cartridges included with his printer ran out of ink, Szot purchased and used third-party ink cartridges from CompAndSave on June 3, 2019.

CLASS ACTION COMPLAINT

100.    Szot did not discern a decline in the quality of the printing while using third-party ink cartridges.

101.    On or around August 2019, Szot installed a software update on his Epson printer.

102.    Immediately upon trying to use his printer after the software Update, Szot received an error message and the printer would not function.

103.    Szot contacted Epson about this problem but did not receive any reply.

104.    After searching online for workarounds, Szot stopped using his printer altogether for a time, and then, eventually, bought Epson ink.

105.    Szot has an unusable third-party ink cartridge that he purchased but can no longer use.

**Plaintiff Dignard's Experience**

106.    Dignard purchased an Epson Workforce Pro WF-3720 online from Dell in or around January 2019.

107.    When making his purchase, Dignard reviewed all of the information and documentation about the printer online and did not see any disclosure that he would only be able to utilize Epson ink cartridges on his printer.

108.    Dignard routinely purchased third-party ink cartridges online and from a local computer store and used them, without issue or loss of functionality or print quality on his Epson printer.

109.    Around November 2019, Dignard's printer prompted him that a firmware Update was available for his printer.

110.    Dignard reviewed the description of the firmware Update, noting that it only purported to improve the functionality of his printer and said nothing about disabling the use of third-party ink cartridges.

111.    Dignard installed the new firmware and his printer immediately stopped working and displayed an error code indicating that the third-party ink cartridges in his printer could no longer be used.

CLASS ACTION COMPLAINT

112.   The following "Maintenance Error" message was prominently displayed on Dignard's printer after the new firmware was installed while he had the third-party ink cartridges properly installed in his Epson printer:



113.   Dignard contacted Epson and was told that he was not able to remove the firmware Update.

114.   Afterward, Dignard purchased Epson ink cartridges and installed them in his printer.  The printer worked as it had before, with no improvement in functionality or print quality.

115.   Dignard purchased and was unable to use several third-party ink cartridges and has been forced to purchase Epson cartridges at a significant expense as compared to the third-party ink cartridges he was previously using.

**Plaintiff Kovach's Experience**

116.   Kovach purchased an Epson Workforce 3720 in the summer of 2019.

117.    After the original ink cartridges that were contained with his purchase ran out of ink, Kovach began to use third-party ink cartridges he purchased at Office Depot in his printer.

118.    Kovach did not detect any change in functionality or print quality when he used third-party ink cartridges as compared to Epson ink cartridges.

119.    After accepting a prompt on his printer to install new printer firmware, Kovach's printer refused to function with third-party ink cartridges and displayed an error message indicating that the third-party cartridges were not recognized by his computer.

120.    Kovach purchased Epson ink cartridges so that he could use his printer and was unable to use several third-party ink cartridges that he had purchased.

## V.    CLASS ACTION ALLEGATIONS

121.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

122.    Plaintiffs bring this action and seek to certify and maintain it as a class action on behalf of themselves and Class, as defined below:

> All United States residents who, within the applicable limitations period, owned or purchased an Epson Printer.

Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers or their immediate family members and associated court staff assigned to this case.

123.    Plaintiffs reserve the right to re-define the Class prior to class certification, and thereafter, as necessary.

124.    The members of the Class are so numerous that individual joinder is impracticable.  Upon information and belief, the Class include thousands of owners of

Epson printers.  Plaintiffs do not know the precise number of Class members, but they may be ascertained from Defendant's books and records.

125.   There are numerous questions of law and fact common to Plaintiffs and the Class.   Questions common to the Class and Subclasses predominate over any questions that may affect individual Class or Subclass members, including, but not limited to:

a.      whether Epson violated the CFAA, 18 U.S.C.§ 1030;

b.      whether Epson violated the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*,

c.      whether Epson made material misrepresentations and omissions regarding Plaintiffs' and the Class Members' printers;

d.      whether Epson's disablement of consumers Epson printers constituted unfair or fraudulent practices under California law;

e.      whether Epson's practices harmed Plaintiffs and Class Members;

f.      whether Plaintiffs' and the Class Members' Epson printers are electronic or high-speed data processing devices as defined in the Computer Fraud and Abuse Act;

g.      whether Epson knowingly accessed Plaintiffs' and Class Members' Epson's printers;

h.      whether Plaintiffs and Class Members authorized Epson to access their Epson printers;

i.      whether Epson exceeded its authority when it accessed Plaintiffs' and Class Members' Epson printers;

j.      whether Epson knowingly transmitted a program information, code, or command that damaged Plaintiffs' and Class Members' Epson printers;

k.      whether Epson knowingly added, altered, deleted, or destroyed any data, computer software or program related to Plaintiffs' and Class Members' printers;

CLASS ACTION COMPLAINT

l.     whether Epson knowingly disrupted the Plaintiffs' and Class Members' printers;

m.     whether Plaintiffs and Class Members are entitled to equitable relief;

n.     the proper measure of damages; and

o.     whether Plaintiffs and Class and Subclass are entitled to restitution, and if so, in what amount.

126.   Plaintiffs' claims are typical of the claims of the Class and Subclasses they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and Class Members purchased and/or owned an Epson printer and have been subject to the same wrongful practices and have been harmed thereby in the same manner.

127.   Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class and Subclasses because they have no interests that are adverse to the interests of the Class and/or Subclasses. Plaintiffs and their counsel are committed to the vigorous prosecution of this action and have the financial resources to do so. Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers and who do not have any interest adverse or antagonistic to those of the Class and Subclasses.

128.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and each Class Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class Member to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court

system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030

129.   Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

130.   The CFAA is a federal criminal statute that prohibits computer crimes, including unauthorized access to a computer, or access that exceeds any authorization and allows persons who have been damaged thereby to bring claims under the CFAA.

131.   The CFAA permits "any person who suffers damages or loss by reason of a violation of this section and may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."   18 U.S.C. § 1030(g).

132.   Plaintiffs and Class Members are "persons" under the CFAA, 18 U.S.C. § 1030(e)(12).

133.   Plaintiffs' and Class Members' Epson printers are "computers" under the CFAA.  Under the CFAA "the term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  18 U.S.C. § 1030(e)(1).   Epson printers are data processing devices and perform storage functions.

134.   Plaintiffs' and Class Members' Epson printers are "protected computers" under the CFAA.  They are "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

135.   Under the CFAA, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information."

136.    The CFAA establishes liability against anyone who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

137.    "[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."

138.    Epson knowingly and with authorization exceeded its authorized access to Plaintiff's and Class Members' printers and caused damage.

139.    Epson took advantage of its ability to access Epson printers and caused the Epson printers to stop working.  Epson used its software and/or firmware Updates to "knowingly" transmit "a program, information, code, or command, and as a result of such conduct" intentionally damaged Plaintiffs' Epson printers, as well as the Class' and Subclasses' Epson printers.  18 U.S.C. § 1030(a)(5)(A).

140.    Epson's knowing intrusions into the Plaintiffs' and the Class' and Subclasses' Epson printers resulted in damage to Plaintiffs and Class Members, by using its Updates to disable Plaintiffs' and Class Member's printers and by forcing them to purchase more expensive third-party ink cartridges and preventing Plaintiffs and Class Members from using cheaper third-party ink cartridges.

141.    Plaintiffs and Class Members seek recovery of damages and all other relief allowed under 18 U.S.C. § 1030(g).

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA**
**UNFAIR COMPETITION LAW ("UCL")**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

142.    Plaintiffs repeat and re-alleges the allegations contained in ¶¶ 1-141 above, as if fully set forth herein.

143.    Epson's headquarters are located in California and Epson regularly conducts business throughout the State of California.

144.    The conduct described herein emanated from Epson's California headquarters.

145.    Epson must adhere to the requirements of the UCL.

146.    The UCL prohibits acts of unfair competition, including unlawful, unfair or fraudulent business acts or practices.

147.    Epson has engaged in unfair, unlawful or fraudulent business acts and practices in violation of the UCL, in that: (a) Epson's practices and conduct are immoral, unethical, oppressive and substantially harmful to Plaintiffs and the members of the Class; (b) the justification for Epson's practices and conduct is outweighed by the gravity of the injury to Plaintiffs and the California Subclass; and (c) Epson's practices constitute unfair, fraudulent, untrue or misleading actions that exploit and mislead members of the public.

148.    Epson's practices were unfair because it is unethical, immoral, oppressive, and substantially injurious to consumers for Epson to knowingly and intentionally disable functioning third-party ink cartridges to force Plaintiffs and the Class members to purchase Epson's more expensive OEM ink cartridges and to eliminate competition from third-party ink cartridge vendors and to use Updates that were characterized as providing improvements and fixes to damage and disable Plaintiffs' and the Class's Epson printers to force them to use Epson OEM ink cartridges.

149.    The gravity of the harm resulting from Epson's conduct outweighs any possible utility of the conduct. Epson had reasonable alternatives to ensure its market share and maintain or increase profits.

150.    Epson's practices were fraudulent because Plaintiffs and the Class were deceived and likely to be deceived by Epson's misrepresentation regarding its Updates and the functionality of third-party ink cartridges.

151.    The harm caused by these practices outweighs any possible utility such business practices could have.

152.    Epson engaged in fraudulent business practices by misrepresenting the functionality of third-party ink cartridges and the purpose of its software and firmware Updates.

153.    Epson's statements and representations would mislead a reasonable consumer into believing that it is not possible to use third-party ink in an Epson printer. Epson further mislead consumers by leading them to believe that its software and/or firmware Updates would improve their Epson printers' functionality.    Instead they disabled the printers.    Plaintiffs and the Class reasonably relied on Epson's statements and purchased ink cartridges that Epson disabled or purchased more expensive Epson brand cartridges believing that the third-party ink cartridges were defective.

154.    Epson's practices were unlawful because they violated the CFAA, as described *supra* in paragraphs 123-135.

155.    Epson's practices were unlawful because they violated the CDAFA, Cal. Pen. Code § 502, which prohibits unauthorized access to computers, computer systems and computer data.    *See San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1087 (N.D. Cal. 2018) ("§ 502 'does not require unauthorized access. It merely requires knowing access.'");    *see also Hill Phoenix, Inc. v. Classic Refrigeration SoCal, Inc.*, No. SACV190695DOCJDEX, 2019 WL 7172977, at *6 (C.D. Cal. Sept. 6, 2019) ("to determine liability under § 502(c), a court must analyze the specific 'acts' that plaintiff contends amount to liability under § 502(c) and whether the defendant had 'permission' to engage in the alleged acts.) *quoting Officia Imaging, Inc. v. Langridge*, No. SACV17-2228-DOC (DFMx), 2018 WL 6137183, at *12 (C.D. Cal. Aug. 7, 2018).

156.    Under Cal. Pen. Code § 502(c)(1) it is unlawful to knowingly alter, damage, or otherwise data, a computer, a computer system, or a computer network in order to either (A) devise or execute a scheme to defraud, deceive, or extort, or (B) wrongfully control money, property, or data.

157.   Epson programed the Updates such that they would cause a false error message to report the incapacitation of the non-Epson ink cartridges as a "Maintenance Error," or that the printer could not recognize the non-Epson ink cartridges.

158.   Cal. Pen. Code § 502(c)(4) and (5) make it unlawful to knowingly alter computer software, or computer programs which reside or exist internal or external to a computer network; or to knowingly cause the denial of computer services to an authorized computer network.  A "computer network" is statutorily defined to mean any system that provides communications between one or more computer systems and input/output devices, including, but not limited to, *printers* connected by telecommunication facilities. Cal. Pen. Code § 502(b)(2).

159.   CDAFA also makes it unlawful to knowingly introduce any "computer contaminant" into any computer, computer system, or computer network. Cal. Pen. Code § 502(c)(8). CDAFA defines "computer contaminant" to mean "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Pen. Code § 502(b)(12).

160.   Here, the Updates constitute computer contaminants that were knowingly introduced to disable the Epson printers' functionality when non-Epson ink cartridges are installed, when it was not the intent of Plaintiffs or the class members to have the Updates disable their printers' ability to utilize less expensive non-Epson ink cartridges.

161.   Epson's practices were also unlawful because they violated the California Consumers Legal Remedies Act, as described *infra* in ¶¶ 164-177.

162.   Epson's conduct caused the Class to suffer an injury in fact.

163.   The Class is entitled to relief under the UCL, including restitution, declaratory relief as well as attorneys' fees and costs to the extent allowed.

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")
### CAL. CIV. CODE §§ 1750, ET SEQ.
### (ON BEHALF OF THE CALIFORNIA CLASS)

164. Plaintiffs repeats and re-alleges the allegations contained in ¶¶ 1-163 above, as if fully set forth herein.

165. The CLRA, Cal. Civ. Code §§ 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Cal. Civ. Code § 1770.

166. Plaintiffs bring this claim individually and on behalf of the Class.

167. Plaintiffs are "consumers," Epson is a "person," and the Products are "goods" within the meaning of the CLRA. Cal. Civ. Code § 1761(a), (c) and (d).

168. Epson's sale and advertisement of the Products constitute "transactions" within the meaning of the CLRA. Cal. Civ. Code § 1761(e).

169. Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.

170. The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

(4) Using deceptive representations . . . connection with goods or services.

(5) Representing that goods…have…approval, characteristics, …uses [and] benefits…which [they do] not have.

(9) Advertising goods…with intent not to sell them as advertised.

Cal. Civ. Code § 1770(a)(4)-(5), and (9).

171. Epson violated the CLRA by deceptively representing that it was updating printer software to improve functionality when the updates were designed to prevent the use of third-party ink cartridges and by falsely representing that its firmware updates would improve the functionality of its printers, when those updates were designed to

reduce or eliminate functionality for owners who wanted to use, or were already using, third-party ink cartridges.

172.  Epson knew or should have known its statements regarding its firmware updates were deceptive and misleading.

173.  Epson also advertised its printers as being of good quality, when it knew that many users would attempt to use third-party ink cartridges and would not be able to do so.

174.  Epson violations of the CLRA proximately caused injury in fact to Plaintiffs and the Class.

175.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

176.  In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief for Defendant's violations of the CLRA.

## FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

177.  Plaintiffs repeats and re-alleges the allegations contained in ¶¶ 1-176 above, as if fully set forth herein.

178.  As the intended and expected result of their conscious wrongdoing, Epson has profited and benefited from installing firmware that incapacitates Epson printers when non-Epson ink cartridges are installed, forcing consumers to purchase Epson ink-cartridges that are substantially more expensive, unjustly enriching Epson.

179.  Epson has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Epson's misconduct, Plaintiffs and the Class members were not receiving products of quality, nature, fitness, or value that had been represented by Epson, and that reasonable consumers expected.

180.  Epson has been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the classes at the expense of these parties.

CLASS ACTION COMPLAINT

181.    Equity and good conscious militate against permitting Epson to retain these profits and benefits.

182.    As a direct and proximate result of Epson's unjust enrichment, Plaintiffs and Class members suffered injury and seek an order directing Epson's disgorgement and the return to Plaintiffs and the Class members of the amount each improperly paid to Epson.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request this Court enter a judgment against Defendant in favor of Plaintiffs and grant the following relief:

A.    enter an Order certifying the proposed Class and Subclasses and appointing Plaintiffs as Class Representatives;

B.    enter an Order issuing appropriate notice to the Class and Subclasses at Defendant's expense;

C.    declare, adjudge and decree that Defendant violated the CFAA;

D.    declare, adjudge and decree that Defendant violated the CDAFA.

E.    declare, adjudge and decree that Defendant's conduct as alleged herein is unlawful, unfair and/or deceptive;

F.    declare, adjudge and decree that Defendant engaged in unfair methods of competition and unfair and deceptive acts;

G.    declare, adjudge and decree that Defendant's advertising and statements were false and misleading;

H.    award Plaintiffs and the members of the Class and Subclasses compensatory and statutorily enhanced damages or compensation as provided for under law for each of the causes of action set forth above;

I.    award restitution and disgorgement of Defendant's revenues or profits from its illegal behavior described herein to Plaintiffs and members of the Class and Subclasses;

J.      award declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and to disgorge to them all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful or pay them restitution and change their business practices.

K.      award Plaintiffs and the Class and Subclasses reasonable attorneys' fees, costs and pre-and post-judgment interest; and

L.      award such other and further relief as the Court deems just and proper.

Date: May 13, 2020

CARLSON LYNCH LLP

By:  */s/ (Eddie) Jae K. Kim*

(Eddie) Jae K. Kim (CA Bar #236805)
ekim@carlsonlynch.com
117 East Colorado Blvd., Ste. 600
Pasadena, CA 91105
Tel.:  619-762-1910
Fax:   412-231-0246

CARLSON LYNCH LLP
Edwin J. Kipela (Pro Hac Vice Pending)
ekilpela@carlsonlynch.com
James P. McGraw, III
jmcgaw@carlsonlynch.com
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel.:  412-322-9243
Fax:   412-231-0246

CARLSON LYNCH LLP
Eric D. Zard (CA Bar #323320)
ezard@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:  619-762-1900
Fax:   619-756-6991

FREED KANNER LONDON & MILLEN LLC
Jonathan M. Jagher (Pro Hac Vice Pending)
jjagher@fklmlaw.com
923 Fayette Street
Conshohocken, PA 19428
Tel.:  610-234-6486
Fax:   224-632-4521

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT